UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KEVIN T. MADDISON, individually and
on behalf of all other persons similarly situated,

                  Plaintiffs,

      -against-                      5:17-CV-0359 (LEK/ATB)

COMFORT SYSTEMS USA (SYRACUSE), INC,
d/b/a ABJ FIRE PROTECTION CO., INC.,

                  Defendant.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Kevin T. Maddison commenced this action on March 30, 2017. Dkt. No. 1 ("Complaint"). His amended complaint is brought individually and on behalf of two putative classes of current and former employees of defendant Comfort Systems USA (Syracuse), Inc., and alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York state law, based on Defendant's failure to provide prevailing wages or adequate overtime payments to its employees. Dkt. No. 14 ("Amended Complaint"). Defendant moves to dismiss this action or, in the alternative, to strike Plaintiff's class allegations. Dkt. Nos. 15 ("Motions"), 15-7 ("Memorandum"). For the reasons that follow, Defendant's motion to dismiss is denied, and its motion to strike is granted in part and denied in part.

## II.    BACKGROUND

### A.  Factual History

Plaintiff was employed by Defendant from May 2011 through May 2015. Am. Compl. ¶ 34. Defendant's employees install[], service[], and maintain[] "fire and security alarm systems"

in buildings for Defendant's clients. Id. ¶ 25. Plaintiff alleges that Defendant entered into numerous "public works contracts" with its clients. Id. ¶ 26. In those contracts, Defendant either expressly promised, or was obligated as a matter of law, to pay New York-mandated prevailing wages to those of its employees who performed work on the public works projects. Id. ¶ 27. Plaintiff alleges that Defendant did not pay him and other employees wages at the prevailing rate for work performed on public works projects, and did not pay these employees overtime pay at 1.5 times the prevailing wage rate. Id. ¶ 33.

More specifically, Plaintiff alleges that he "often worked in excess of 40 hours in a week and was not paid . . . overtime pay at the lawful prevailing wage rate." Id. ¶ 36. During each year of his employment with Defendant, Plaintiff spent two weeks working at Tompkins Cortland Community College (the "Tompkins Site"). Id. During this time, "he work[ed] approximately 45 hours per week, and in any event more than 40 hours per week." Id.

**B.  Procedural History**

On September 3, 2015, the New York State Department of Labor ("NYSDOL") began investigating Defendant's alleged underpayment of employees who worked at the Tompkins Site between 2013 and 2015. Dkt. No. 15-1 ("Pizzutelli Declaration") ¶ 3; Dkt. Nos. 15-2 ("Exhibit 1"), 15-4 ("Exhibit 3"). In a document dated January 10, 2017, NYSDOL confirmed that Defendant "agreed to make prevailing rate corrections" for nine employees who worked at the Tompkins Site. Pizzutelli Decl. ¶ 4; Dkt. No. 15-3 ("Exhibit 2"). Plaintiff was one of the employees who Defendant agreed to pay corrected compensation at the prevailing wage rate. Pizzutelli Decl. ¶ 5; Ex. 3 at 11–14.

2

Plaintiff commenced this action on March 30, 2017. Compl. On June 12, 2017, Defendant moved to dismiss the Complaint or, in the alternative, to strike the Complaint's class allegations. Dkt. No. 10. Plaintiff filed his Amended Complaint on June 30, 2017. Am. Compl. The Amended Complaint alleges that Defendants violated the FLSA by failing to pay Plaintiffs and similarly situated employees ("FLSA Class") overtime at a rate of 1.5 times the prevailing wage. Id. ¶¶ 14–15, 37–40. It also alleges that Plaintiff and a putative class of employees ("Rule 23 Class") were third-party beneficiaries of contracts that Defendant entered into with "various government entities," and that Defendant breached its contractual obligations by failing to pay the class wages at the prevailing rate. Id. ¶¶ 16, 41–45. Finally, Plaintiff, on behalf of the Rule 23 Class, pleads quantum meruit and unjust enrichment claims against Defendant. Id. ¶¶ 46–53. Defendant moved to dismiss the Amended Complaint or, in the alternative, to strike Plaintiff's class allegations. Mot; Mem. Plaintiff opposed the Motion, Dkt. No. 17 ("Response"), and Defendant filed a reply, Dkt. No. 18 ("Reply").

## III.   MOTION TO DISMISS

### A.  Legal Standard

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the nonmoving party. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility,

however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

### B. Discussion

Defendant argues in support of its motion to dismiss that (1) Plaintiff's FLSA claim is partially time-barred; (2) Plaintiff's allegation that Defendant paid him and other employees overtime pay at less than the prevailing wage is not cognizable under the FLSA; (3) Plaintiff pleads his FLSA claim with insufficient specificity; and (4) the Court should decline to exercise supplemental jurisdiction over Plaintiff's state contract law claims. Mem. at 7–12. The Court addresses each of these arguments below.

### 1. Statute of Limitations

Plaintiff alleges that he was employed by Defendant from May 2011 to May 2015, and that Defendant failed to pay him prevailing wages and overtime at the prevailing wage rate during this period. Id. ¶¶ 35–36. Defendant argues in its Reply that the FLSA has a two-year limitation period, or a three-year limitation period where "willful conduct" on the part of the Defendant is alleged. Reply at 7 (citing 29 U.S.C. § 255(a)). Accordingly, Defendant argues that

Plaintiff can, at most, state a FLSA violation for actions that Defendant took after

March 30, 2014, Mem. at 7, which is three years before Plaintiff filed his initial Complaint,

Compl.

The Court rejects Defendant's belated statute of limitations defense. "Issues raised for the

first time in a reply brief are generally deemed waived." Connecticut Bar Ass'n v. United States,

620 F.3d 81, 91 n.13 (2d Cir. 2010) (citing Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir.

1998)). In Charlotten v. Heid, the court deemed the defendant's statute of limitations defense

waived because it was raised for the first time in the defendant's reply brief. No. 09-CV-891,

2011 WL 3423826, at *16 n.2 (N.D.N.Y. Aug. 4, 2011). The court reasoned that, because

"[p]laintiff was not permitted to respond to the [r]eply under the Local Rules[,] [s]ua sponte

dismissal of this claim as time-barred would therefore be unwarranted here, because [p]laintiff

was not entitled to notice and an opportunity to be heard as to why his claim was nonetheless

timely." Id. (internal citations omitted). This reasoning is applicable here. The Local Rules

prohibit Plaintiff from filing a surreply, L.R. 7.1(b)(1), and dismissal of his claim as time-barred

would unfairly deprive him of a chance to demonstrate that his FLSA claim is timely. Therefore,

the Court deems Defendant's statute of limitations defense waived.

### 2. Whether Plaintiff's Unpaid Overtime Claim is Cognizable under the FLSA

Plaintiff alleges that he and other employees of Defendant were required to receive New

York-mandated prevailing wages when working on public works contracts. Am. Compl. ¶ 27. He

claims that Defendant regularly paid him and other employees at a rate below the prevailing

wage rate, and that, when Plaintiff and other employees worked over forty hours in one week,

Defendant paid them overtime at 1.5 times the lower rate instead of 1.5 times the prevailing wage

rate. Am. Compl. ¶ 33; Resp. at 1. Defendant argues that the FLSA does not provide employees a

cause of action when an employer fails to provide overtime pay at 1.5 times the prevailing wage

rate. Mem. at 7–8.

The FLSA prohibits employers from requiring applicable employees to work for more

than forty hours in one week "unless such employee receives compensation for his employment

in excess of [40] hours . . . at a rate not less than one and one-half times the regular rate at which

he is employed." 29 U.S.C. § 207(a)(1). The parties disagree over whether "the regular rate" is

the rate at which the employee is *actually* paid for straight time hours or the contractually agreed-

upon, or prevailing rate. Mem. at 7–8; Resp. at 1–5. The answer to this question is not settled.

In Grochowski v. Phoenix Construction, the class action plaintiffs—laborers working on

"federally funded construction projects"—alleged that their employer paid them less than the

prevailing wage rate required by the Davis-Bacon Act ("DBA"), and that their overtime pay

should have been calculated at 1.5 times the prevailing wage rate instead of at 1.5 times the lower

rate that the plaintiffs were actually paid. 318 F.3d 80, 87 (2d Cir. 2003). The Second Circuit

observed that the "FLSA . . . serves a different purpose than the DBA. The DBA provides for the

payment of locally prevailing wages for work on federally funded projects. In contrast, the FLSA

requires employers to pay each employee a guaranteed minimum wage, and it does not address

liability for underpayment of hours at prevailing wage rates." Id. The Second Circuit, opining on

the meaning of the "'regular rate' of pay," stated that the regular rate "is 'the hourly rate *actually*

*paid* the employee for the normal, non-overtime workweek for which he is employed." Id.

(quoting Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)).

Importantly, the Court reasoned that the DBA set forth an administrative scheme to remedy

prevailing wage issues, and that the plaintiffs could not "use the FLSA to circumvent the procedural requirements of the DBA." Id.

Defendant cites the broad language in Grochowski to challenge Plaintiff's overtime claim. Mem. at 7; Reply at 2. However, as Plaintiff observes, Resp. at 2–4, numerous courts in this Circuit have interpreted Grochowski's holding as limited to cases where a plaintiff who worked on a federally-funded project seeks to use the FLSA to evade the DBA's administrative scheme for recovery of federally prevailing wages. For instance, in Sobczak v. AWL Industries, Inc., the plaintiffs claimed that their FLSA overtime pay should have been calculated at the New York prevailing wage rate for work they performed on state public job sites. 540 F. Supp. 2d 354, 357 (E.D.N.Y. 2007). The court held that the "regular rate" in § 207(a)(1) was the prevailing wage rate, not the sub-prevailing wage that the plaintiffs were actually paid. Id. at 361.The court stated that Grochowski "has to be read in context," and emphasized that the decision "was driven by the desire to avoid an end-run around the administrative process of" the DBA, and concluded, "Grochowski precludes consideration of federal prevailing wage standards in determining plaintiffs' rights under the FLSA," but was inapplicable to "claims [that] arise under state funded contracts, to which state prevailing wage standards apply." Id. at 360.

The weight of authority in this Circuit follows the reasoning in Sobczak, and permits employees like Plaintiff to state a FLSA claim based on an employer's failure to pay overtime at the appropriate prevailing wage rate, as long as the prevailing wage rate was set by state law instead of the DBA. See, e.g., Hernandez v. NJK Contractors, Inc., No. 09-CV-4812, 2015 WL 1966355, at *41 n.39 (E.D.N.Y. May 1, 2015) ("Grochowski addresses prevailing wage on federal job sites, which implicates the [DBA], and not state law prevailing wage

claims."); Hapanowicz v. Alexandria Tile Co., Inc., No. 11-CV-127, 2014 WL 1311441, at *10 (E.D.N.Y. Mar. 31, 2014); Custodio v. Am. Chain Link & Constr., Inc., No. 06-CV-7148, 2014 WL 116147, at *14 (S.D.N.Y. Jan. 13, 2014) ("I agree with Sobczak's analysis, and I adopt [its] reasoning here. I conclude that the issue of prevailing wages under New York State law and overtime under the FLSA were intertwined."); Dong v. Ng, No. 08-CV-917, 2011 WL 2150544, at *6 (S.D.N.Y. Mar. 8, 2011) (holding that plaintiffs were owed FLSA overtime pay based on "the contractual wage rate, rather than what defendants actually paid them," and observing, "were it otherwise—that is, if the time-and-a-half measure were based on what defendants actually paid plaintiffs, even if in violation of the Labor Law and defendants' contracts—the employer would receive a windfall for his unlawful conduct"), adopted by 2011 WL 2150545 (S.D.N.Y. May 31, 2011). While there is limited authority to the contrary, e.g., Brown v. Tomcat Elec. Sec., Inc., No. 03-CV-5175, 2010 U.S. Dist. LEXIS 47616, at *2 (E.D.N.Y. May 14, 2010) (holding that the FLSA "does not provide for the judicial vindication of any statutory right to be paid a prevailing wage"), the Court agrees that Grochowki's holding only applies to claims where a plaintiff asks for FLSA overtime calculation based on the prevailing wage rate for work performed pursuant to *federal* public works contracts.

Defendant argues that Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106 (2d Cir. 2013), and Nakahata v. New York-Presbyterian Healthcare Sys., 723 F.3d 192, 201 (2d Cir. 2013), foreclose the Court's reading of Grochowski. Mem. at 7. However, these cases are inapposite. Both Lundy and Nakahata state only that the FLSA does not provide a remedy for an employer's failure to pay straight time wages. See Lundy, 711 F.3d at 115–16 ("So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid

hours *before the 40-hour threshold*." (emphasis added)); Nakahata, 723 F.3d at 201 ("The FLSA is unavailing even when an employee works over 40 hours per week and claims gap-time wages *for those hours worked under 40 per week*." (emphasis added)). Neither of these cases suggest that a plaintiff cannot state a FLSA claim based on the employer's failure to pay *overtime* at the state-mandated prevailing wage rate.

Defendant also cites a section of a Department of Labor interpretative bulletin in support of its argument, Mem. at 8 (citing 29 C.F.R. § 778.108), but this, too, is unavailing. To begin with, because § 778.108 is an interpretative regulation, "the court is not required to afford [the section] controlling deference." Perkins v. S. New England Tel. Co., No. 07-CV-967, 2011 WL 4460248, at *2 (D. Conn. Sept. 27, 2011); see also Kavanaugh v. Grand Union Co., Inc., 192 F.3d 269, 277 (2d Cir. 1999) ("[W]e are free to reject an interpretative regulation if we are not persuaded that it is sound."). Therefore, even if the interpretation did contradict Plaintiff's theory of FLSA liability, the Court would not be bound to honor it.

In any event, the interpretation *does not* foreclose Plaintiff's theory of liability. Section 778.108 states: "The Supreme Court has described [the regular rate] as the hourly rate actually paid the employee for the normal, nonovertime week for which he is employed—an 'actual fact.'" § 778.108 (citing Walling, 325 U.S. at 424). While this provision initially appears to support Defendant's interpretation of "the regular rate," the interpretation, and the Supreme Court opinion on which it relies, must be read in context. Walling, and, thus, § 778.108, reflect the concern that "parties [could] simply designate [through an employment contract] a 'regular rate' that does not reflect the reality of how employees are actually paid under the contract." Crespo v. County of Monroe, No. 10-CV-6590L, 2015 WL 2406112, at *5 (W.D.N.Y.

May 20, 2015). "The primary purpose of that rule is to avoid having employees paid less than they should be, because of an *artificially low* 'regular rate.'" Id. (emphasis added). Walling and § 778.108 do not ask courts to *ignore* the contractually-agreed wage rate when determining the regular rate. See Walling, 325 U.S. at 424 ("The regular rate by its very nature must reflect all payments *which the parties have agreed shall be received* regularly during the workweek, exclusive of overtime payments.") (emphasis added); Chavez v. City of Albuquerque, No. CV-02-562, 2007 WL 8043104, at *8 n.9 (D.N.M. Aug. 10, 2007) (observing that the Walling "line of cases does not stand for the proposition that a [contract] cannot expand . . . an employee's rights beyond those set forth in the FLSA"); accord Sobczak, 540 F. Supp. 2d at 358–59.

Because neither Grochowski, Lundy, Nakahata, nor the Department of Labor's interpretative bulletin prohibit Plaintiff's claim that Defendant should have calculated his overtime pay using New York's prevailing wage rate, and because the weight of authority supports Plaintiff's theory of liability, the Court denies Defendant's motion to dismiss based on its interpretation of the "regular rate."

### 3. *The Sufficiency of Plaintiff's FLSA Claim*

To support his FLSA claim, Plaintiff alleges that he "often worked in excess of 40 hours in a week and was not paid prevailing wages at overtime pay at the lawful prevailing wage rate, in violation of" the FLSA. Am. Compl. ¶ 36. He states, as an "example," that "for each summer of his employment with Defendant[,] Plaintiff worked at Tompkins Cortland Community College for a two week period, working approximately 45 hours per week, and in any event more than 40 hours per week in those weeks." Id. Defendant argues Plaintiffs' allegations regarding his work

at the Tompkins Site are precluded and, without those allegations, Plaintiff fails to state an FLSA

claim. Mem. at 9–12. The Court first addresses whether Plaintiff is precluded from alleging

underpayment at the Tompkins Site, and then evaluates the sufficiency of his pleading.

### a.  Preclusion

Defendant argues that Plaintiff's Tompkins Site allegations are precluded because the

NYSDOL settlement records, Exs. 1–3, "reveal Plaintiff was already fully compensated, at the

prevailing wage rate, for all of his work performed at the Tompkins site via [Defendant's]

settlement with" NYSDOL. Mem. at 10. When evaluating a motion to dismiss pursuant to

Rule 12(b)(6), the Court may only consider "facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference,

and . . . matters of which judicial notice may be taken." Allen v. WestPoint Pepperell, Inc., 945

F.2d 40, 44 (2d Cir. 1991). While Defendant correctly observes that "[t]he Court may take

judicial notice of the records of an administrative agency," Mem. at 10 (citing Rullan v. New

York City Dep't of Sanitation, No. 10-CV-8079, 2011 WL 1833335, at *1 n.1 (S.D.N.Y.

May 12, 2011)), the Court may only take judicial notice of such records "to establish their

existence and legal effect, or to determine what statements [they] contained . . . *not for the truth*

*of the matters asserted*," Fine v. ESPN, Inc., 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014) (alteration

in original) (quoting Liang v. City of New York, No. 10-CV-3089, 2013 WL 5366394, at *5

(E.D.N.Y. Sept. 24, 2013)). Therefore, while the Court may take judicial notice of the fact that

Defendant and several of its employees participated in an NYSDOL settlement, it may not take

judicial notice of the NYSDOL records for the truth of the matter asserted in these records—that

Plaintiff was compensated for his work at the Tompkins Site. See, e.g., Dkt. No. 15-5 ("Exhibit

4") (stating that "restitution . . . has been made to [nine] workers in regards to the settlement number above.").

Furthermore, Plaintiff states that he worked at the Tompkins Site during each summer of his employment with Defendant, which spanned from 2011 to 2015. Am. Compl. ¶¶ 34, 36. The NYSDOL records indicate that the settlement covered Defendant's underpayment of Tompkins Site employees from 2013–15. Ex. 3. Therefore, even if the Court were to assume that Plaintiff was compensated for his Tompkins Site work from 2013–15, this would not, even under Defendant's theory of preclusion, preclude Plaintiff from alleging that he was underpaid for his work at the Site from 2011–12.

In its Reply, Defendant offers a more targeted preclusion argument, stating that Plaintiff's "FLSA claim for liquidated damages" could have been evaluated at the time of the NYSDOL settlement and is, thus, barred by res judicata. Mem. at 8; see Am. Compl. ¶ 40 (seeking liquidated damages for Defendant's alleged FLSA violation). "The doctrine of res judicata . . . provides that a final judgment on the merits in one action bars subsequent relitigation of the same claim by the same parties." Greenberg v. Bd. of Governors of Fed. Reserve Sys., 968 F.2d 164, 168 (2d Cir. 1992). Settlements supervised by an administrative agency can have preclusive effect if the parties to the settlement so intended. Id. The intent of the parties "is to be determined from the language of the agreement itself." White v. U.S. Postal Serv., No. 04-CV-602, 2005 WL 408047, at *3 (E.D.N.Y. Feb. 16, 2005). While Defendant provides records from the settlement showing that it made restitution to several of its employees, it does not provide the actual settlement agreement. Therefore, the Court cannot say that the parties intended the settlement to be "a final settlement regarding all liability of Defendant with respect

12

to this matter." <u>Id.</u> Cf. <u>Gagne v. Fix</u>, No. 11-CV-361, 2014 WL 950130, at *5 (W.D.N.Y. Mar. 11, 2014) (holding that a settlement agreement had preclusive effect because "[t]he release . . . state[d] that the plaintiff released and discharged [various parties] from all claims, demands and liability of every kind and nature . . . arising out of the facts set forth in the foregoing claim"); <u>Matter of AMR Corp.</u>, 566 B.R. 657, 668–69 (S.D.N.Y. 2017) ("[B]ecause the settlement agreement by its terms extinguished all the claims that the [union] or its members may have had, the settlement agreement is a final judgment on the merits."). Therefore, Plaintiff's FLSA liquidated damages claim is not barred by res judicata.

### b.  Sufficiency

Defendant argues that, without Plaintiff's Tompkins Site allegations, his FLSA claim should be dismissed because it is not pleaded with the specificity required by <u>Lundy</u>, <u>Nakahata</u>, and <u>DeJesus v. HF Mgmt. Servs., LLC</u>, 726 F.3d 85 (2d Cir. 2013). Mem. at 11–12; Reply at 4–5. Because Plaintiff is not precluded from alleging underpayment at the Tompkins Site, his allegations suffer from none of the deficiencies identified in the three Second Circuit cases on which Defendant relies.

In <u>Lundy</u>, the Court affirmed the dismissal of the plaintiffs' FLSA overtime claims because they did "not allege[] a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." 711 F.3d at 114. By contrast, Plaintiff specifically stated that he regularly worked over forty hours a week and that, at the Tompkins Site, he worked around 45 hours per week for two weeks in each summer during his employment with Defendant. Am. Compl. ¶ 36. This is a plainly sufficient allegation under <u>Lundy</u>. See <u>Tanski v. AvalonBay Cmtys., Inc.</u>, No. CV-15-6260, 2016 WL 8711203, at *9 (E.D.N.Y.

Sept. 30, 2016) ("As courts in this Circuit have since observed, all that is required under <u>Lundy</u> and its progeny is '[a] blend [of] enough specific facts—the hours worked, the hours paid, the rate of pay, the employment practices at issue, and so forth—to make plausible the existence of at least one given work week of more than forty hours.'" (alterations in original) (quoting <u>Anjum v. J.C. Penney Co.</u>, No. 13-CV-460, 2014 WL 5090018, at *17 (E.D.N.Y. Oct. 9, 2014))).

In <u>Nakahata</u>, the plaintiffs alleged that they were uncompensated for various tasks that they performed outside their scheduled shift times, but never alleged that they were scheduled for forty hours of work per week. 723 F.3d at 201. The court dismissed the plaintiffs' claims, reasoning that they failed to "provide sufficient detail . . . to support a reasonable inference that they worked more than forty hours in a given week." <u>Id.</u> Plaintiff's allegations contain no similar arithmetical shortcoming—he alleges that he worked more than forty hours per week on numerous occasions.

Finally, in <u>DeJesus</u>, the plaintiff "alleged only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation," and the court dismissed the claim because the plaintiff's allegations merely repeat[ed] the language of" § 207(a)(1). 726 F.3d at 89. Plaintiff, like the plaintiff in <u>DeJesus</u>, asserts that he "often worked in excess of 40 hours in a week" without receiving "overtime pay at the lawful prevailing wage rate." Am. Compl. ¶ 36. However, he also states that, for a two-week period during each summer that he was employed with Defendant, he worked over 40 hours per week at the Tompkins Site. <u>Id.</u> Thus, unlike the plaintiff in <u>DeJesus</u>, Plaintiff has "provide[d] some factual context . . . [to] 'nudge' [his] claim 'from conceivable to plausible.'" <u>DeJesus</u>, 726 F.3d at 90 (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see also</u> <u>Mendez v. U.S. Nonwovens Corp.</u>, 2 F. Supp. 3d 442, 456–57

14

(E.D.N.Y. 2014) (finding that plaintiff stated a FLSA overtime claim where he gave a specific

example of a week where he "worked ninety-six hours . . ., but was only paid for seventy hours").

In sum, Plaintiff's FLSA overtime allegations do not suffer from the defects in the trio of

cases cited by Defendant. Instead, using his work at the Tompkins Site as an example, Plaintiff

provides sufficient factual detail to create a plausible inference that, for at least two weeks a year

from 2011–15, he worked more than forty hours per week and Defendant failed to pay him

overtime at 1.5 times the prevailing wage rate. See Leon v. Port Wash. Union Free Sch. Dist., 49

F. Supp. 3d 353, 357 (E.D.N.Y. 2014) ("Since [Lundy, Nakahata, and DeJesus], various district

courts have denied motions to dismiss where the plaintiff sufficiently alleges that they regularly

worked forty hours per week, and are uncompensated for specified overtime work[] performed

beyond that." (collecting cases)). Therefore, Plaintiff's FLSA claim survives dismissal.

### 4. State Law Claims

Plaintiff alleges a breach of contract claim on behalf of himself and the Rule 23 Class

based on Defendant's alleged breach of public works contracts that required it to pay its

employees wages at the prevailing rate. Am. Compl. ¶¶ 42–45. Plaintiff alleges in the alternative,

on behalf of himself and the Rule 23 Class, quantum meruit and unjust enrichment claims based

on Defendant's failure to pay its employees wages at the prevailing rate. Am. Compl. ¶¶ 46–53.

The Court will exercise supplemental jurisdiction over these state law claims. "The basic

statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331

and 1332. Section 1331 provides for '[f]ederal-question' jurisdiction, § 1332 for '[d]iversity of

citizenship' jurisdiction." Arbaugh v. Y&H Corp., 126 S.Ct. 1235, 1244 (2006) (quoting

§§ 1331–32). A court has federal question jurisdiction when "the claim as stated in the complaint

'arises under the Constitution or laws of the United States.'" <u>Rocha v. Bakhter Afghan Halal</u>

<u>Kababs, Inc.</u>, 44 F. Supp. 3d 337, 343 (E.D.N.Y. 2014) (quoting <u>Burke v. Lash Work Env'ts,</u>

<u>Inc.</u>, 408 F. App'x 438, 440 (2d Cir. 2011)). When a federal court has subject matter jurisdiction

over claims in an action, it may exercise supplemental jurisdiction over "all other claims that are

so related to claims in the action within such original jurisdiction that they form part of the same

case or controversy." 28 U.S.C. § 1367(a).

 The Court has federal question jurisdiction over Plaintiff's FLSA claim, which arises

under the laws of the United States. Like Plaintiff's FLSA claim, his state law claims concern

Defendant's underpayment of wages to him and similarly situated employees for work that these

employees performed pursuant to public works contracts. Therefore, Plaintiff's FLSA and state

law claims form part of the same case or controversy. Defendant does not challenge this

conclusion—instead, in support of its motion to dismiss, it asks the Court to decline to exercise

supplemental jurisdiction over Plaintiff's state law claims because it assumed the Court would

dismiss Plaintiff's FLSA claim. Mem. at 12 ("Because Plaintiff indisputably fails to state a

plausible claim for relief under FLSA, this Court should decline to exercise supplemental

jurisdiction over the Plaintiff's state law claims."). Because the Court did *not* dismiss Plaintiff's

FLSA claim, exercising supplemental jurisdiction over his state law claims is plainly appropriate.

**IV.** **Motion to Strike**

 **A.**  **Legal Standard**

 Rule 23 of the Federal Rules of Civil Procedure states, "At an early practicable time after

a person sues or is sued as a class representative, the court must determine by order whether to

certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). A defendant may move to strike

class claims before a plaintiff moves to certify the class. See Pilgrim v. Univ. Health Card, LLC,

660 F.3d 943, 949 (6th Cir. 2011) (holding that Rule 23(c)(1)(A) gives district courts authority to

grant a defendant's motion to strike class claims without "await[ing] a motion by the plaintiffs").

However, "motion[s] to strike class allegations  . . . are . . . disfavored because [they] require[] a

reviewing court to preemptively terminate the class aspects of . . . litigation . . . before plaintiffs

are permitted to complete the discovery to which they would otherwise be entitled on questions

relevant to class certification." Wang v. Hearst Corp., No. 12-CV-793, 2012 WL 2864524, at *3

(S.D.N.Y. July 12, 2012). Where arguments raised in support of a motion to strike class

allegations "are indistinguishable from the issues that would be decided in the context of a

motion for class certification," the motion to strike should generally be dismissed as

"procedurally premature." Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 117

(S.D.N.Y. 2012). A motion to strike class allegations may nevertheless be granted if a defendant

"demonstrate[s] from the face of the [c]omplaint that it would be impossible to certify the alleged

class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery." Reynolds

v. Lifewatch, Inc., 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (quoting Mayfield v. Asta Funding,

95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015)).

### B.  Discussion

Plaintiff purportedly represents two classes. The putative FLSA Class consists of Plaintiff

"and all similarly situated current and former employees of Defendant who elect to opt into this

action" pursuant to "the collective action provision of . . . FLSA, 29 U.S.C. § 216(b)." Am.

Compl. ¶ 4. The putative Rule 23 Class, organized pursuant to Rule 23 of the Federal Rules of

Civil Procedure, "consist[s] of all laborers, workmen and mechanics who performed work for

[Defendant] on public works projects from March 30, 2011 to the entry of judgment in this case."
Am. Compl. ¶ 18. Defendant argues that, if the Court does not grant its motion to dismiss, the
Court should strike Plaintiff's class allegations because he does not have standing to represent
employees whose claims against Defendant arose before his employment began or after it ended.
Mem. at 17. Furthermore, regarding the Rule 23 Class, Defendant argues that Plaintiff fails to
plead an ascertainable class or establish Rule 23's requirements of numerosity, commonality,
typicality, and adequacy of representation. Mem. at 16 (citing Fed. R. Civ. P. 23(a)).

Determining whether the Rule 23 Class is ascertainable, and whether it meets the other
Rule 23 requirements, are clearly matters to be decided following a motion for class certification,
after Plaintiff has had an adequate opportunity for discovery. See, e.g., Chen-Oster, 877 F. Supp.
2d at 117 ("[Defendant's] objections address Rule 23(a)(2)'s commonality requirement, which is
exactly the sort of issue that would be litigated and decided in the context of a motion for class
certification.").

Moreover, Defendant does not argue that no amount of discovery could remedy the
defects it identifies in Plaintiff's class allegations—instead, it simply challenges the definition of
the Rule 23 Class as "amorphous," and criticizes the remainder of the class allegations as being
"nothing more than a formulaic recitation of the Rule 23 requirements." Mem. at 15–16 (internal
quotation marks omitted). Regarding the ascertainability challenge, Defendant correctly observes
that Plaintiff's Rule 23 class is defined in multiple ways, id. at 14 (noting that Plaintiff defines
the class as "'labors, workmen and mechanics' who worked on public works projects" and as
"those 'employed doing various types of electrical work' on 'fire alarm and security system
equipment'") (citing Am. Compl. ¶¶ 1–2, 5, 7, 6, 18). However, issues with the scope of class

18

definition are best resolved not on the face of Plaintiff's Amended Complaint, but at the close of class discovery. See, e.g., Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."); Reynolds, 136 F. Supp. 3d at 517–18 ("[C]lass discovery will serve to refine the class and the allegations and to aid the [c]ourt in determining whether class certification is appropriate, by making clearer the extent of the burden that ascertaining the class poses."). For these reasons, the Court denies Defendant's motion to strike Plaintiff's class allegations to the extent that the motion challenges the ascertainability of the Rule 23 Class or Plaintiff's satisfaction of Rule 23's requirements.

However, Defendant's argument that Plaintiff lacks standing to represent employees whose allegations against Defendant arose before May 2011 or after May 2015 "is not procedurally premature because one way in which a claim for class certification can fail as a matter of law is lack of standing." Chen-Oster, 877 F. Supp. at 120. "A class cannot be certified if a named plaintiff lacks Article III standing." Vaccariello v XM Satellite Radio, Inc., 295 F.R.D. 62, 68 (S.D.N.Y. 2013). "Accordingly, the named plaintiff must 'allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Id. (citing Warth v. Seldin, 422 U.S. 490, 502 (1975)). Plaintiff purports to represent the FLSA and Rule 23 Classes from March 30, 2011—one month before Defendant employed him—to the entry of judgment in this case—several years after May 2015, when he left Defendant's employ. Am. Compl. ¶¶ 18, 34. Plaintiff cannot claim to have been injured by any underpayment made by Defendant to its employees before or after his dates of employment. Accordingly, Plaintiff only

19

has standing to represent the Rule 23 and FLSA Classes regarding injuries that the putative

classes incurred between May 2011 and May 2015. See Roach v. T.L. Cannon Corp.,

No. 10-CV-591, 2015 WL 10818750, at *6 (N.D.N.Y. Sept. 4, 2015) (narrowing the "temporal

scope" of named plaintiffs' class claims because named plaintiffs did not have standing to

represent the class on dates before or after they were employed by defendant).

      For the reasons stated above, Defendant's motion to strike is denied to the extent that it

concerns whether the putative Rule 23 Class is ascertainable or otherwise meets Rule 23's

requirements. However, the Court grants the portion of the motion that asks the Court to restrict

Plaintiff's class allegations to the period from May 2011 through May 2015.

## V.    CONCLUSION

      Accordingly, it is hereby:

      **ORDERED**, that Defendant's Motions (Dkt. No. 15) are **GRANTED in part** and

**DENIED in part**. Defendant's motion to dismiss the Amended Complaint pursuant to

Rule 12(b)(6) is **DENIED**. Defendant's motion to strike is **GRANTED** to the extent that it asks

the Court to strike any of Plaintiff's class claims that allegedly arose before May 2011 or after

May 2015. Defendant's motion to strike is otherwise **DENIED**; and it is further

      **ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the

parties in accordance with the Local Rules.

      **IT IS SO ORDERED.**

DATED:     February 01, 2018
             Albany, New York

Lawrence E. Kahn
U.S. District Judge

20