UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KEVIN T. MADDISON and DAVID WALTON,
*individually and on behalf of others similarly
situated*,

                              Plaintiffs,

        -against-                                    5:17-CV-359 (LEK/ATB)

COMFORT SYSTEMS USA (SYRACUSE),
INC. d/b/a ABJ FIRE PROTECTION CO.,
INC.,

                              Defendant.

_____

                    **MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        Plaintiffs Kevin Maddison and David Walton brought a putative class action against

Defendant Comfort Systems USA (Syracuse), Inc. ("Defendant") to recover unpaid overtime

payments and prevailing wages Defendant allegedly withheld from them. Dkt. No. 101 ("Third

Amended Complaint"). After five years of litigating this action, the parties have reached a

settlement in the amount of $60,000. Dkt. No. 169 ("Motion").

        Now before the Court is an unopposed Motion from Plaintiffs requesting the following:

(1) preliminary approval of the proposed settlement agreement, Dkt. No. 169-2; (2) certification

of the settlement class pursuant to Federal Rule of Civil Procedure 23(b)(3); (3) scheduling of a

fairness hearing to consider final approval of the settlement; (4) an order directing that notice of

the proposed settlement and final approval hearing be provided to absent class members in a

manner consistent with the settlement agreement and notice plan, Dkt. Nos. 169-2, 169-4; and

(5) entering of the proposed order for preliminary approval that Plaintiffs have attached, Dkt. No.

169-6; see Mot. at 1. For the reasons that follow, the Court grants the Motion in its entirety.

## II.     BACKGROUND

### A.  Factual Background

The Court detailed Plaintiffs' factual allegations in a previous Memorandum-Decision and Order, familiarity with which is assumed. Dkt. No. 116 ("May 2020 Order") at 2–3.

### B.  Procedural History

The Court recounted the "long and somewhat convoluted procedural history" of this action in a previous Memorandum-Decision and Order, familiarity with which is also assumed. Dkt. No. 106 ("February 2020 Order") at 2–4; see also May 2020 Order at 3.

However, in the interim, there have been subsequent developments in this case. For instance, on May 20, 2020, the Court granted in part and denied in part Defendant's third motion to dismiss. Dkt. No. 103; see May Order at 12. The Court subsequently affirmed an order from the Honorable Andrew T. Baxter, United States Magistrate Judge, Dkt. No. 133, denying Plaintiffs' motion to amend their complaint, Dkt. No. 120. Thereafter, the only remaining claims concerned Defendant's failure to credit intra-day travel toward overtime pay under New York labor law. See Dkt. Entry dated May 14, 2021; Mot. at 2.

Following the February 2020 and May 2020 Orders, Defendant produced payroll documents for settlement purposes. Dkt. Nos. 145, 148. Based on these documents, the parties began negotiating so Plaintiffs could provide a monetary demand. Dkt. No. 150. After several months, Plaintiffs presented a monetary demand for Defendant's consideration. See Dkt. Nos. 153, 155–56, 159, 161, 163.

Following several months of negotiation, the parties filed a notice of settlement on August 15, 2022. Dkt. No. 165. The settlement figure amounted to $60,000, which includes $27,449.13 in payments to 35 class members, $2,500 to each named Plaintiff as an incentive

award, $8,000 in settlement administration costs, and $19,950.87 in attorneys' fees and costs.

Mot. at 33; Dkt. No. 169-3 at 3; Mot. at 3. Plaintiffs calculated the $27,449.13 in payments based

on Defendant's payroll documents. Mot. at 3 (citing Dkt. No. 169-3). Despite the settlement,

Defendant maintains that it did not engage in any unlawful conduct. Id. The settlement

agreement also permits Plaintiffs to appeal the grant of summary judgment on Plaintiffs'

prevailing wage claims. Dkt. No. 169-2 at 6.

Moreover, the class Plaintiffs seek to certify is defined as follows:

> All individuals who worked for Comfort Systems USA (Syracuse),
> Inc. d/b/a ABJ Fire Protection Co., Inc. from March 30, 2011
> through May 30, 2015 performing electrical or sprinkler work such
> as installing, maintaining, inspecting, testing, repairing and/or
> replacing fire alarm, fire sprinkler and security system equipment.

Id. at 3. The class members eligible to receive payments are those who do not submit a valid and

timely opt-out form. Mot. at 3.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval for any class action

settlement. Approval of a class action typically occurs in two stages: (1) preliminary approval,

"where 'prior to notice to the class a court makes a preliminary evaluation of fairness,' and (2)

final approval, where 'notice of a hearing is given to the class members, [and] class members and

settling parties are provided the opportunity to be heard on the question of final court approval.'"

In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d 686, 686–92 (S.D.N.Y. 2019) (quoting In re

Payment Card Interchange Fee and Merchant Discount Antitrust Litig., 330 F.R.D. 11, 28

(E.D.N.Y. 2019)) (alteration in original). "In weighing a grant of preliminary approval, district

courts must determine whether 'giving notice is justified by the parties' showing that the court

*will likely be able to*: (1) approve the proposal under Rule 23(e)(2); and (ii) certify the class for

purposes of judgment on the proposal.'" 330 F.R.D. at 28 (quoting Fed. R. Civ. P. 23(e)(1)(B)(i-ii) (emphasis in original). Finally, "[c]ourts in this circuit recognize a 'strong judicial policy in favor of settlements, particularly in the class action context.'" In re Facebook, Inc., IPO Sec. & Derivative Litig., 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018), (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005)) aff'd sub nom. In re Facebook, Inc., 822 Fed. App'x 40 (2d Cir. 2020).

## IV.   DISCUSSION

### A.  Likelihood of Approval Under Rule 23(e)(2) and the Grinnell Factors

On December 1, 2018, new amendments to Rule 23 took effect, which changed the standards applicable to a court's preliminary approval analysis. See In re GSE Bonds, 414 F. Supp. 3d at 692. Before these amendments, Rule 23 did not articulate a standard relevant to preliminary class approvals, so courts in this Circuit "interpreted Rule 23 to only require the settlement to be 'within the range of possible final approval.'" Id. (quoting In re NASDAQ Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). Under the Rule 23 amendments, a court must consider whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." In re Payment Card, 330 F.R.D. at 28. In doing so, "the reviewing court must not lose sight of the 'strong judicial policy in favor of settlements, particularly in the class action context.'" Gordon v. Vanda Pharms. Inc., No. 19-CV-1108, 2022 WL 4296092, at *2 (E.D.N.Y. Sept. 15, 2022).

The Second Circuit's settlement approval analysis now relies on two overlapping multi-factor tests. Id. at *3. Courts must first balance the factors enumerated in the 2018 Amendments to Rule 23(e)(2), which require the court to evaluate "the fairness, reasonableness, and adequacy of a settlement." Id. The relevant factors include whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts must also weigh the Grinnell factors set out in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class throughout trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. Consequently, courts in this this Circuit now supplement the Grinnell factors with the Rule 23(e)(2) factors. See, e.g., Gordon, 2022 WL 4296092, at *2; In re GSE Bonds, 414 F. Supp. 3d at 692. As Judge Rakoff in the Southern District of New York observed: "The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these 'Grinnell' factors." In re GSE Bonds, 414 F. Supp. 3d at 692 (quoting 2018 Advisory Notes to Fed R. Civ. P. 23, Subdiv. (e)(2)).

    *1.  Adequacy of Representation*

    Rule 23(e)(2)(a) requires courts to determine whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ P. 23(e)(2)(A). "Determination of adequacy generally 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007) (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)).

    Here, Plaintiffs' interests "are aligned with the other class members' interests because they suffered the same injuries[,]" 414 F. Supp. 3d at 692, which, in this case, includes the alleged deprivation of prevailing wages under New York law. Mot. at 14. As a result of these injuries, Plaintiffs have an "interest in vigorously pursuing the claims of the class." Denny v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006); see also 414 F. Supp. 3d at 692. Furthermore, the Court finds that Plaintiffs' counsel, Jason J. Rozger, "[has] demonstrated that [he is] qualified, experienced, and able to conduct the litigation as evidenced in [his] interactions with the Court." 414 F. Supp. 3d at 692. The Court thus concurs with the other courts that have made the same finding with respect to Counsel Rozger. See Ramos v. SimplexGrinnell L.P., 796 F. Supp. 2d 346, 358 (E.D.N.Y. 2011); Bennett v. SimplexGrinnell LP, No. 11-CV 01854, 2015 WL 1849543, at *1 (N.D. Cal. Apr. 22, 2015); Marriott v. County of Montgomery, 227 F.R.D. 159, 172 (N.D.N.Y. 2005).  The involvement of "experienced capable counsel" in these negotiations evinces a "presumption of correctness." In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008). Therefore, this consideration weighs in favor of preliminary approval.

### 2. Arm's Length Negotiation

The Court must next consider whether the parties' proposed settlement is the product of an arm's length negotiation. See Fed. R. Civ. P. 23(e)(2)(b). Generally, when a class settlement is reached through arm's length negotiations "between experienced, capable counsel knowledgeable in complex litigation, 'the [s]ettlement will enjoy a presumption of fairness.'" 414 F. Supp. 3d at 693 (citation omitted).

Here, as discussed above, the Court concludes that the counsel representing the parties are clearly experienced and capable in the sort of complex litigation at issue here. Moreover, "the Court is not aware of any evidence or indicia suggesting that the negotiations were collusive." Simerlein v. Toyota Motor Corp., No. 17-CV-1091, 2019 WL 1435055, at *14 (D. Conn. Jan. 14, 2019). Indeed, "[t]he parties have vigorously litigated this case, and were engaged in extensive, arms-length settlement discussion in this matter." Id.; see also Dkt. Nos. 156, 159, 161, 163. Accordingly, this factor also weighs in favor of preliminary approval.

### 3. Rule 23(e)(2)(C) Adequacy of Relief Factors

#### a. Costs, Risk, Delay of Trial, and Appeal

Rule 23(e)(2)(c) requires analyzing whether relief for the class is adequate. The Court must consider the following when undertaking this inquiry: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the methods of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). See Fed. R. Civ. P. 23(e)(2)(c). The Court notes that this "inquiry overlaps significantly with a number of Grinnell factors, which help guide the Court's

application of Rule 23(e)(2)(c)(i)." In re GSE Bonds, 414 F. Supp. 3d at 693 (citing In re Payment Card, 330 F.R.D. at 36).

One Grinnell factor now reflected in Rule 23(e)(2)(c) is the "complexity, expense, and likely duration of the litigation." Grinnell, 495 F.2d at 463. Here, given this action's procedural history, including Defendant filing several dispositive motions over the course of several years, the Court finds that "[l]itigation through trial would be complex, expensive, and long." Diaz v. E. Locating Serv. Inc., No. 10-CV-04082, 2010 WL 5507912, at *4 (S.D.N.Y. Nov. 29, 2010). Importantly, "even if [P]laintiffs 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'" 414. F. Supp. 3d at 693–94 (quoting Sykes v. Harris, No. 09-CV-8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016)). As a result, this Grinnell factor weighs in favor of preliminary approval.

Another two related Grinnell factors—"the risks of establishing liability" and the "risks of establishing damages"—must also be considered. Grinnell, 495 F.2d at 463. When assessing these two factors, courts "should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." In re Payment Card, 330 F.R.D. at 37.

Here, the risks of establishing liability weighs in favor of preliminary approval. As discussed above, Defendant has vigorously litigated Plaintiffs' claims and "the parties remain fiercely divided on fundamental issues of liability. . . . ." Gordon, 2022 WL 4296092, at *4. The parties both agree that significant uncertainty exists regarding Plaintiffs' ability to prove liability; indeed, the uncontested admission from Plaintiffs that settling "eliminates substantial risk"

evinces this uncertainty. Mot. at 6. However, neither party contests that "damages would be ascertainable." Id. That factor thus weighs against preliminary approval.

The remaining relevant Grinnell factors, "require[] a court to assess 'the risks of maintaining a class throughout the trial.'" In re GSE Bonds, 414 F. Supp. 3d at 694 (citing Grinnell, 495 F.2d at 463). "Although the 'risk of maintaining a class through trial is present in [every] class action this factor [nevertheless weighs in favor of settlement]' where 'it is likely that defendants would oppose class certification' if the case were to be litigated." Id. (cleaned up) (citing Garland v. Cohen & Krassner, No. 08-CV-4626, 2011 WL 6010211, at *8 (E.D.N.Y Nov. 29, 2011)).

Here, the parties agree that "Defendant would contest the entitlement of Plaintiffs to the travel time credit . . . [and] Plaintiffs expect that Defendant would continue to aggressively defend this case." Mot. at 6. Accordingly, "the maintenance of the class would not be guaranteed if the settling defendants went to trial. This factor thus . . . weighs in favor of preliminary approval." 414 F. Supp. 3d at 694.

### b.  Effectiveness of the Proposed Method of Distributing Relief

Under Rule 23(e)(2)(C)(ii), the Court must analyze "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).

Here, the Court agrees with Plaintiffs that the settlement likely satisfies Rule 23(e)(2)(C)(ii). First, the settlement total was "prepared by experienced counsel . . . [which is an indicium] of reasonableness." Gordon, 2022 WL 4296092, at * 4 (citation omitted). Second, the settlement amount compensates the proposed class "with 100% of their allegedly unpaid overtime if they were to be fully successful on their overtime/travel time claims." Mot. at 5.

Third, the settlement provides the named Plaintiffs $2,500 payments to compensate their

additional efforts and hardships on behalf of the class. Id. at 7. These sorts of incentive payments

are commonplace in employment-related class actions. See, e.g., Frank v. Eastman Kodak Co.,

228 F.R.D. 174, 187 (W.D.N.Y 2005); In re Janney Montgomery Scott LLC Fin. Consultant

Litig., 2009 WL 2137224, at *12 (E.D. Pa. July 6, 2009); Bredbenner v. Liberty Travel, Inc.,

2011 WL 1344745, at *22–23 (D.N.J. Apr. 8, 2011). Accordingly, "the fundamental structure of

the plan—to ascertain each class member's total loss due to [D]efendant[']s alleged

misconduct[—]appears reasonable and rational." Gordon, 2022 WL 4296092, at *4.

### c. The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment

The Court must now examine "the terms of any proposed award of attorneys' fees,

including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Courts in this Circuit routinely

"find requests for attorney's fees which are approximately one-third of the class action's total

settlement . . . to be reasonable." Gordon, 2022 WL 4296092, at *5 (citing Rosenfeld v. Lenich,

No. 18-CV-6720, 2021 WL 508339, at *7 (E.D.N.Y. Feb. 11, 2021)); see also In re Payment

Card Interchange Fee & Merch. Disc. Antitrust Litig., 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014)

("[I]t is very common to see 33% contingency fees in cases with funds of less than $10

million.").

Here, the proposed award of attorney's fees is approximately one-third of the class action

settlement. Mot. at 3. This payment weighs in favor of preliminary approval. With respect to the

"timing of payment," the settlement does not specifically provide a timetable or allocation plan,

see generally Dkt. No. 169-2; instead, the proposed settlement notice merely provides that the

attorney's fees "are being paid out of the settlement fund." Dkt. No. 169-4 at 5. This suggests

that payment would be conveyed to class counsel immediately upon entry of the payment to the

10

class. Although this form of payment "does not bolster the case for preliminary approval, it also does not undercut the case where as, here, the majority of other factors weigh significantly in its favor." Mikhlin v. Oasmia Pharm. AB, No. 19-CV-4349, 2021 WL 1259559, at *7 (*E.D.N.Y. Jan. 6, 2021).

d. <u>Any Agreement Required to be Identified Under Rule 23(e)(3)</u>

Rule 23(e)(2)(c)(iv) mandates that the Court consider "any agreement required to be identified under Rule 23(e)(3)," i.e., "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(c)(iv). "Generally, this provision has been read to also reference the settlement itself." Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP, 333 F.R.D. 314, 322 (S.D.N.Y. 2019) (citing 5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018)). However, "given that no other Rule 23(e)(3) agreement exists, this factor has no bearing on the preliminary approval analysis." Id.

4. <i>Grinnell Adequacy Factors</i>

a. <u>Defendant's Ability to Withstand a Greater Judgment</u>

This factor counsels against approving the proposed settlement. Defendant is a "large corporation[], and there is no evidence on the record that they could not withstand a greater judgment." In re GSE Bonds, 414 F. Supp. 3d at 698. However, "this does not in and of itself, undermine an otherwise reasonable settlement." Gordon, 2022 WL 4296092, at *5.

b. <u>Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation</u>

"Courts often consider the eighth Grinnell factor, the range of reasonableness of the settlement in light of the best possible recovery, and the ninth Grinnell factor, the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of

litigation, together." Johnson, 333 F.R.D. at 323 (citing In re Payment Card, 330 F.R.D. at 47–48).

As discussed above, "some risks would be attendant upon continuing to litigate against" Defendant, so to determine "[w]hether these risks justify a settlement in the amount agreed to by [P]laintiffs . . . requires analysis of the best possible recovery [P]laintiffs could expect." In re GSE Bonds, 414 F. Supp. 3d at 698.

Here, "Plaintiffs' risk-reward calculation appears reasonable." Id. Plaintiffs represent that the $27,449.13 would "provide[] the class with 100% of their allegedly unpaid overtime if they were to be fully successful[,]" which eliminates "the risk and delay of having to try their claims against [Defendant], [] without having to move this Court to certify a class action, adding additional risk and delay." Mot. at 5. Consequently, it appears that Plaintiffs would receive 100% of their best possible recovery, which significantly exceeds the percentage of recovery that other courts in this Circuit have approved. See, e.g., In re Currency Conversion Fee Antitrust Litig., 01-CV-1409, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (preliminarily approving settlements "representing roughly 10-15% of the credit transaction fees collected by Defendants"); Gordon, 2022 WL 4296092, at *6 (preliminarily approving a settlement of "approximately 10.2% of reasonably recoverable damages"). And although the precarity of recovery in wage and hour cases is not as pronounced as it is in securities fraud litigation, see Gordon, 2022 WL 4296092, at *6, the successful motion practice by Defendant in dismissing Plaintiffs' previous claims, and potential for future dismissal of Plaintiffs' remaining claims, counsel in favor of approval. See Mikhlin, 2021 WL 1259559, at *5, *9 (E.D.N.Y. Jan. 6, 2021) ("Settlement is favored in cases in which plaintiffs would have faced significant legal and factual obstacles to proving their case." (internal quotation marks omitted)).

5. *Equitable Treatment of Class Members*

"After an adequacy assessment, Rule 23(e)(2)(d) finally requires the Court to consider whether 'the proposal treats class members equitably relative to each other.'" 414 F. Supp. 3d at 698. Courts consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment relief." 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2)

Here, although the range in distribution varies from $100 to $3,076.57 among the class members, Dkt. No. 169-3, Plaintiffs represent that the variance "provides the class with 100% of their allegedly unpaid overtime." Mot. at 5. Assuming that this statement represents a distribution based on each member's specific deprivation of overtime wages, the plan appears as though it "takes appropriate account of differences among [the] claims." 2018 Advisory Notes to Fed R. Civ. P. 23, Subdiv. (e)(2).

The Court has reviewed the settlement agreement's release provisions and finds that they do not raise any relevant equitable concerns. Accordingly, this factor also weighs in favor of preliminary approval.

**B. Likelihood of Certification of the Class**

"In order to preliminarily approve the settlement proposal[], the Court must also find that it will likely be able to certify the class for purposes of judgment on the proposal." In re GSE Bonds, 414 F. Supp. 3d at 699–700 (citation omitted). "A court may certify a class for settlement purposes where the proposed settlement class meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b)." Id. at 700 (citation omitted).

1. *Rule 23(a)*

Rule 23(a)'s four threshold requirements include: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. <u>See</u> Fed. R. Civ. P. 23(a). The settlement class likely satisfies each factor.

a. <u>Numerosity</u>

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). In the Second Circuit, numerosity is presumed for classes of 40 or more. <u>See</u> <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 252 (2d Cir. 2011) (citing <u>Consol. Rail Corp v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995)). However, when a proposed class is fewer than 40 members, courts consider other factors including judicial economy, size of the individual claims, the financial resources of the class members, and the ability of the class members to institute individual suits. <u>See</u> <u>Robidoux v. Celani</u>, 987 F.2d 931, 937 (2d Cir. 1993).

Here, 35 class members comprise the proposed settlement class. Turning to the relevant factors, judicial economy is vindicated by the proposed settlement because many of the individual claims are less than $1,000. Dkt. No. 169-3. And requiring members to file individual suits for awards as small as $100 would undermine judicial economy.

Next, Plaintiffs represent that the class members "likely lack the resources to pursue individual claims, particularly where the amounts are small." Mot. at 11. This reality also advises in favor of finding sufficient numerosity.

Additionally, other courts in this Circuit have certified classes with fewer members. <u>See</u> <u>Odom v. Hazen Transp., Inc.</u>, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certifying class of sixteen truck drivers in wage and hour case); <u>Meyer v. Stevenson, Bishop, McCredie, Inc.</u>, No. 74-CV-5274, 1976 WL 788, at *2 (S.D.N.Y May 11, 1976) (certifying a class action comprised of thirty

14

members); see also Robidoux, 987 F.2d at 935 ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement.") (citation omitted). Therefore, the numerosity requirement is likely met.

### b. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that a question is common to a class if it is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Additionally, commonality requires plaintiffs "to demonstrate that the class members have suffered the same injury." Id. at 349–50 (citation and quotations omitted). The Second Circuit has held that: "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015).

Here, the commonality requirement "is likely met because plaintiffs allege the same economic injury stemming from" Defendant's alleged failure to pay them overtime pay by not crediting travel time toward those overtime hours. 414 F. Supp. 3d at 700.

### c. Typicality

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is met when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010) (citing Marisol A. v. Giuliani, 126 F.3d 372, 375 (2d Cir. 1997) (per curiam)).

Here, typicality is likely satisfied because the claims of the named Plaintiffs and class members arise from the same set of facts, involving the same claims concerning Defendant's alleged failure to pay overtime based on the same company policy. See Gortat v. Capala Bros. Inc., No.07-CV-3629, 2009 WL 3347091, at *6 (E.D.N.Y Oct. 16, 2009), report and recommendation adopted, No. 07-CV-3629, 2010 WL 14323018 (E.D.N.Y Apr. 9, 2010) (finding typicality where "[n]amed plaintiffs allege[d] that they each performed similar work for Defendant and that, like other members of the class, they were never compensated for all the hours they worked as a result of Defendants' common scheme to deprive employees of pay for all hours worked"), aff'd, 568 Fed. App'x 78 (2d Cir. 2014).

### d.  Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This factor "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000). Here, "[g]iven the similarity of this inquiry to the adequacy inquiry under Rule 23(e)(2)(A), the Court will likely find that this requirement is met for the reasons outlined" above. In re GSE Bonds, 414 F. Supp. 3d at 701.

### 2.  Rule 23(b)

"In addition to finding that the class satisfies Rule 23(a), the Court must also determine whether the class meets the requirements of Rule 23(b) (1), (2), or (3)." Id. In this case, Plaintiffs seek certification pursuant to Rule 23(b)(3). Mot. at 15. Certification is appropriate under Rule 23(b)(3) "[1] when the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual class members, and [2] that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ P. 23(b)(3).

a.  Predominance

"The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013) (quoting UFCW Local 1776 v. Eli Lily & Co., 620 F.3d 121, 131 (2d Cir. 2010)).

Here, Plaintiffs likely meet the predominance requirements. "While some degree of individualized analysis will be necessary . . . the fundamental factual issue[s]" concern whether class members were (1) paid the wages they were allegedly owed, (2) credited with intra-day travel toward overtime, and (3) entitled to overtime by reason of Defendant's alleged pay practices. Koss v. Wackenhut Corp., No. 03-CV-7679, 2009 WL 928087, at 11 (S.D.N.Y. Mar. 30, 2009). These fundamental factual issues appear to be "subject to generalized proof and outweigh[] any issues that may be subject to individualized proof." Id. Minor differences among the employees concerning job titles, hours, and amount owed cannot defeat a predominance finding in these circumstances. See Gortat, 2009 WL 3347091, at *7 (holding that differences in employee jobs, hours, and methods of payments "do not predominate over the main issue: . . . that Defendant paid all of [the] employees for fewer hours than they claim to have worked").

b.  Superiority of Class Action

In determining whether a class action is superior to other available methods of adjudicating the controversy, courts consider four nonexclusive factors including: (1) the class

17

members' interests in litigating individually in separate actions; (2) the extent and nature of any litigation already commenced by class members; (3) the desirability of concentrating litigation of the claims in a particular forum; and (4) the manageability of the litigation as a class action. See Fed. R. Civ. P. 23(b)(3).

Here, a class action would be the superior form of adjudicating this controversy. As discussed above, "the small size of each plaintiff's claim[] may make individual suits difficult to pursue and may render a class action the only avenue by which the individual plaintiffs are able to seek legal redress." Barone v. Safway Steel Prod., Inc., No. 03-CV-4258, 2005 WL 2009882, at *6 (E.D.N.Y. Aug. 23, 2005). Likewise, unlike the 35 potential lawsuits, "a class action would eliminate the risk that questions of law common to the class will be decided differently in each lawsuit." Torres v. Gristede's Operating Corp., No. 04-CV-3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (citation omitted). And in the same vein, there is no indication that a class action would be unmanageable.

### C.  Notice Plan

For the reasons detailed above, the Court finds that the settlement proposal and class certification should be preliminarily approved. Therefore, the Court, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(b). Because this putative class will be certified under Rule 23(b)(3), "the [C]ourt must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ P. 23(c)(2)(B). This includes "individual notice to all members who can be identified through reasonable effort." Id. "Notice is adequate if it 'apprises prospective class members of the terms of the settlement and the options that are available to them.'" Gordon, 2022 WL 4296092, at *9

18

(citation omitted). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." In re GSE Bonds, 414 F. Supp. 3d at 702 (quoting Wal-Mart Stores, 396 F.3d at 113–14).

Plaintiffs' notice plan satisfies the reasonableness requirement. Plaintiffs propose to send a mail notice to all class members, which includes a toll-free number to direct inquiries about the settlement. Dkt. No. 169-4. The notice plan also provides recipients the address, phone number, and email address of the class counsel to whom class members may contact for information concerning the settlement. See id. Importantly, this notice satisfies the Due Process Clause of the Fourteenth Amendment and Rule 23. See Cayuga Indian Nation v. Carey, 89 F.R.D. 627, 633 (N.D.N.Y. 1981) ("[I]ndividual notice by first class mail, coupled with notice by publication satisfied the requirements of due process and Rule 23."). Although Plaintiffs do not plan to publish the notice, the Court is satisfied with class counsel's explanation that publication is not necessary given that the mailing address of each class member is available to class counsel from Defendant's records. Mot. at 19. Additionally, "the claims administrator will follow up and investigate to fund current address for any class notice that is returned." Id.

The Court must also make certain that the proposed notice is substantively reasonable under Rule 23. Rule 23(c)(2)(B) requires the notice to:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B). The Court has reviewed the notice and concludes that the proposed notice satisfies all of these requirements. Accordingly, the Court approves the proposed class notice and the plan for its distribution.

### D. Fairness Hearing

Having approved the class action in its preliminary stage, the Court must ensure that "the parties are given an opportunity to be heard before the Court approves the settlement." Gordon, 2022 WL 4296092, at *2 (citation omitted). Accordingly, the Court will schedule a final fairness hearing for final approval of the settlement class on November 2, 2023, at 10:30 AM. The fairness hearing will provide a forum for proponents and opponents of the settlement proposal to explain, describe, or challenge the proposed terms.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the motion for preliminary approval of the class action settlement (Dkt. No. 169) is **GRANTED**; and it is further

**ORDERED**, that a fairness hearing for final approval of the class settlement will be held on November 2, 2023 at 10:30 AM at the James T. Foley U.S. Courthouse, 445 Broadway, Albany, New York 12207, or by videoconference or teleconference if determined by separate order, to consider whether the settlement should be fully, finally, and unconditionally approved, including the fairness, the reasonableness, and adequacy of the proposed settlement; the dismissal with prejudice of this class action with respect to Defendant; the enjoining of all class members from prosecuting against Defendant and any released party any released claims; and the entry of final judgment in this class action consistent with the terms of the Parties' Settlement Agreement. Class Counsel's application for an award of attorney's fees and costs and Settlement

Class Representative Award for Named Plaintiffs shall be heard at the time of the Final Approval

Hearing; and it is further

**ORDERED**, that notice of the proposed settlement and final approval hearing be

provided to absent class members in a manner consistent with the settlement agreement and

notice plan, and in the form and content substantially as set forth in the settlement agreement;

and it is further

**ORDERED**, that the parties and their counsel adhere to the settlement procedures

delineated in the Order titled Order Preliminarily Approving Class Action Settlement; and it is

further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     May 3, 2023
              Albany, New York

LAWRENCE E. KAHN
United States District Judge